LEWIS, J.,
dissenting.
I dissent. In my view, the trial court did not err in denying injunctive relief *1194 under these factual circumstances and the Fifth District was correct in its affirmance. If the facts in this case were limited to those expressed in the majority opinion, which suggest immediate action by Garvin in response to the recall process, my view would be somewhat different. However, in my view the record demonstrates without question that Garvin did not seek in-junctive relief until after the recall petition process had been totally completed and only the recall election itself remained.
I suggest that application of the provisions of the recall initiative statute involves a delicate balance between the important property rights of the office holder (and the participatory and representative rights of those voters who originally elected him or her) and the rights of the dissatisfied electorate (which may include those same voters) which must be respected. Rather than embracing and attempting to implement this balance, the majority view too far accommodates rights from the perspective of the office holder, and totally eviscerates those of the electorate.
The factual canvas upon which the majority expresses its interpretation omits important facts which, in my view, compel a contrary result. The recall process involves multiple stages. Here, prior to September 4, 1998, a first set of petitions to recall Garvin were circulated among voters by members of a recall committee to obtain signatures from 10% of the city’s qualified electors. After the requisite voter signatures on these initial 10% petitions had been obtained, and despite the fact that a copy of the 10% petition had been served upon her,[3] Garvin took absolutely no action to challenge the legal sufficiency of the petition. All of the reasons for the requested recall were presented to her at that time.
As required by the recall statute,[4] the committee then circulated a second peti *1196 tion, together with Garvin’s written defense to the charges. Before a recall issue may be placed on an election ballot, the second petition must be signed by at least 15% of qualified voters. See § 100.361, Fla. Stat. (1997).
By September 4, 1998, the petition process was completed when the final stage 15% petitions were submitted to the Supervisor of Elections of Volusia County. It was only at this point that Garvin filed her complaint for declaratory and injunc-tive relief with the circuit court, seeking to enjoin the recall proceedings. Thus, notwithstanding the fact that she had full knowledge of the content of the petition before the petition process was finalized and the 15% petitions were circulated and completed, Garvin took no action to challenge the process. It was only after the voters had completed the entire preelection petition process that Garvin challenged the legal sufficiency of the petition and sought injunctive relief.
Although only the first ground of the petition was legally sufficient, the recall petition clearly reflects a theme of allegations that Garvin ignored the city manager form of government through direct dealings with city employees (see grounds 1, 3 and 4 of the grounds set forth in the majority opinion, supra, at P. 1190-91). While the appellate court thus properly found that only one valid ground[5] had been stated in the petition,[6] it concluded that, pursuant to section 100.361, Florida Statutes, the inclusion of the inartfully drafted grounds should not invalidate the entire petition process:
We chose to align ourselves with Wolfson. Wolfson distances the courts and judges further from the legislative and political elective process than Davis. *1197 We are comfortable with that result, although we realize it puts elected officials at greater risk of removal from office. In fairness to the office holder who is being subjected to a recall process, if the legal sufficiency of recall grounds set forth in a recall petition are challenged promptly, they should be ruled upon by a court early enough in the process so that any invalid grounds would be stricken. However, the failure to do so does not, in our view, invalidate the recall process and election.
721 So.2d at 1227 (emphasis supplied)[7].
The Fifth District expressly recognized both the importance of the timing of the officer holder’s challenge and that resolution of this difficult issue requires that a balance be reached between preserving the integrity of a process which places elected officials at risk of removal from office and properly “distancing] the courts and judges ... from the legislative and political elective process.” Garvin, 721 So.2d at 1227; see also Wolfson, 326 So.2d at 91-92 (observing — in upholding both the trial court’s dismissal of the action seeking in-junctive relief and its denial of a motion to strike certain recall grounds — that the appellate court saw “no reason ... to depart from the wise judicial policy to steer clear of the political processes of the electorate”).
Such a “balancing test” appears to have been undertaken by the trial court here, as reflected in the conclusion to its final order denying injunctive relief:
As our Supreme Court recently said in Beckstrom v. Volusia County Canvassing Board, et al., 707 So.2d 720 (Fla.1998) quoting Boardman v. Esteva, 323 So.2d 259 (Fla.1975):
The real parties in interest here, not in the legal sense but in realistic terms, are the voters. They are possessed [sic] to the ultimate interest and it is they whom we must give primary consideration.. Ours is a government of, by and for the people. Our federal and state constitutions guarantee the right of the people to take an active part in the process of that government, which for most of our citizens means participation via the election process. The right to vote is the right to participate; it is also the right to speak, but more importantly it is the right to be heard. We must tread carefully on that right or we risk the unnecessary and unjustified muting of the public voice. By refusing to recognize an otherwise valid exercise of the right of a citizen to vote for the sake of sacred, unyielding adherence to statutory scripture, we would in effect nullify that right.
While the Beckstrom case dealt with an absentee ballot controversy and not an effort to force a recall election, the factors utilized by the Supreme Court in considering the validity of the questioned ballots would, as a matter of public policy, seem persuasive in this case. Those factors are:
a. The presence or absence of fraud, gross negligence or intentional wrongdoing.
b. Whether there has been substantial compliance with the essential requirements of the law;
*1198 c. Whether the irregularities complained of adversely affect the sanctity of the ballot (or in this case, the recall petitions) and the integrity of the process.
In this case, the Court finds no evidence of fraud, gross negligence or intentional wrongdoing. The Court also finds that there has been substantial compliance with the requirements of § 100.361, Florida Statutes (1998) and that the irregularities complained of did not adversely affect the sanctity of the recall petitions or the integrity of the recall process.
Applying this type of standard to the present case and recognizing the timing of the challenge, both the trial court, in considering Garvin’s request for injunctive relief, and the appellate court, in reviewing the denial of that relief pursuant to an abuse of discretion standard,[8] obviously weighed important competing concerns in the balance. I certainly recognize, as discussed by the majority supra at 1192-93, the potential for abuse inherent in a rule of law which would, under all circumstances, allow a recall election to be based upon a petition containing invalid grounds. Unless, upon timely judicial review,[9] not just the legally insufficient portion of a defective petition, but the entire process based upon it, is invalidated, this could effectively undermine the legitimate purposes served by the recall statute. Cf. Moultrie v. Davis, 498 So.2d 993, 997 (Fla. 4th DCA 1986)(observing that, while the 200-word limitation “severely limits the ability to expand on specifics, it is obviously not intended to allow a petitioner to speak only in vague generalities,” and, “[wjere we to uphold a recall petition based on the bare allegations before us, it would be tantamount to declaring open season on any elected official who did anything, or failed to do something, which happened to displease ten percent of the electorate”).
On the other hand, an important right of the electorate[10] should not be easily frus *1199 trated. As this Court has stated in a different context, “[w]e should seek to avoid, not foster a hyperteehnical application of the law.” Simpson v. State, 418 So.2d 984, 986 (Fla.1982).
In Meiners v. Bering Strait School District, 687 P.2d 287 (Alaska 1984), the Alaska Supreme Court, in addressing the same issue, discussed at length the opposing interests involved in this confrontation of ideas. In so doing, it specifically rejected the approach taken by the Second District in Wolfson:
Since we have concluded that paragraphs one and two of the petition state sufficient grounds to go to the voters, and the superior court found that all parties agree that paragraph three does not, we are faced with the question of whether all, part, or none of the petition should be submitted to the voters. The relevant statutes offer little guidance. Sections 160 and 170, which refer to rejection of the petition for insufficiency, do not speak to the question of partial rejection. AS 29.28.210(1) provides that “A recall ballot contains ... the grounds as stated in the recall petition.” From these statutes, the superior court concluded that insufficiency of any of the allegations of the petition required rejection of the entire petition.
Preliminarily, we reject two other possible positions. First, AS 29.28.210(1), in stating that the ballot must contain “the grounds as stated in the recall petition,” at a minimum means that the Director of Elections cannot do what she initially did in the present case: rewrite the allegations of the petition in different language. As we discussed on pages 16-18 above, there are sound reasons why neither the voters nor the target officials would be well served by the vesting of this type of discretion in the certifying officer.
A second view, advanced by none of the parties before us, also must be rejected. That is that if any one of the allegations is sufficient, the entire petition goes before the voters. [Citing Wolfson, 326 So.2d at 91-92], While this construction would avoid putting unwarranted discretionary power in the certifying officer, we think its dangers are apparent. It might force the target official to expend most of his 200 words of rebuttal fending off charges, which although legally insufficient for recall, he fears might garner the voters’ attention. It invites abuse; it invites the drafting of recall petitions with little regard for the statutory grounds of recall.
Much of what we have said earlier in this opinion leads us to reject the superior court’s construction of these statutes, that any one insufficient provision requires the entire petition to be rejected. We áre of the view that such a construction would frustrate the purpose of the recall statute, significantly increasing the cost in both time and money of a recall effort. If, as was the case here, the recall petition is prepared without the assistance of legal counsel, and is attacked by counsel retained by either the target official or the public entity which he serves, the recall process would appear unduly to handicap the proponents of recall. Their only recourse if any deficiency were found would be to begin the process of circulating petitions again, with no assurance that their new petition would not fall to some different objection. The number of signatures required for a recall petition is large, so that an official’s attention is not diverted from her duties to defending against a recall unless a substantial proportion of her constituents take the affirmative act of signing a recall petition. But a corollary of this is that the circulation of a recall petition can require a substantial commitment of resources.
Instead, we adopt the position proposed by the Director of Elections on *1200 this issue: the certifying officer may delete severable individual charges from a recall petition if those charges do not come within the grounds specified by statute. But those charges which are sufficient to meet the statute must be set forth on the ballot in full, as contained in the petition, without revision. This approach avoids the dangers with the approaches which we have rejected. It seems to us to be the approach most fair simultaneously to the proponents of recall, the target officials, and the voters.
Id. at 302-03.
Here, the applicable statute — section 100.361, Florida Statutes (1997) — like the Alaska recall statute, similarly “offer[s] little guidance”[11] regarding how these conflicts should be resolved. However, the process outliiled in the statute does suggest an appropriate accommodation for the competing interests involved, particularly when an office holder waits until after the entire petition process has been completed to voice an objection. It must also be remembered that Florida law does not contemplate placement of the grounds contained in the recall petition on the recall ballot upon which the electorate votes. See § 100.361(3), Fla. Stat. (1997).
Pursuant to section 100.361(l)(f), Florida Statutes, the office holder is officially advised of the recall petition when the first, 10% petition is submitted, at which time he or she may prepare and file a written defense. In fairness to both the office holder and the electorate, this is the point in the process at which an office holder alleging the legal deficiency of a petition and seeking to invalidate and enjoin the entire recall process should challenge the petition.[12] Cf. Garvin, 721 So.2d at 1227 *1201 (observing that, “[i]n fairness to the office holder who is being subjected to a recall process, if the legal sufficiency of recall grounds set forth in a recall petition are challenged promptly, they should be ruled upon by a court early enough in the process so that any invalid grounds would be stricken”); see generally Morton v. McDonald, 41 Wash.2d 889, 252 P.2d 577, 579 (1953)(holding that the statutorily required notice given to an office holder when a petition which has already been circulated and signed is filed does not constitute the “beginning of the cause of complaint which the legislature had in mind when it said any proceeding to compel or prevent the performance of any such act [i.e., any act not in compliance with the recall statutes] shall be begun within ten days from the time the cause of complaint arises and” observing that “[r]ecall is a matter of public knowledge; it is assumed that an officer knows when a recall is under way and will be sufficiently interested to keep himself informed as to what is transpiring”).
Here, had Garvin challenged the sufficiency of the grounds contained in the 10% petition by appropriate legal action and sought injunctive relief when she was statutorily notified of the 10% petition and before the second 15% petition had been completed and submitted to the Supervisor of Elections, the trial court could have taken early action to invalidate the entire petition before further circulation. This would have required the process to recommence with a petition containing only legally sufficient reasons for recall.
Where, as here (in contrast), the office holder waited until the second (15%) petition had been obtained and the petition process totally completed before filing a challenge to the petition, her only remedy at that late date should have been to have any invalid charges stricken from the election ballot, if such charges were to appear there.[13] However, to the extent that the recall statute could ever be read to allow the inclusion of petition charges on the ballot, under no circumstances should the wording of any legally insufficient ground appear on the ballot. Additionally, in those cases where it is only after the 15% petition has been completed and filed that *1202 an office holder challenges the petition process and it is thereafter determined, upon judicial review,[14] to contain both a legally sufficient ground and other legally invalid charges, the entire petition process should not be invalidated at that late date, and a trial court should not, as the majority requires, be compelled to grant injunc-tive relief.
I recognize and agree, as the majority opinion reflects, that the recall process is not within the normal and ordinary flow of the elective process, and is somewhat in the nature of an extraordinary proceeding. However, in the absence of a clear indication in the statute regarding what should happen in situations such as the one addressed here, a common-sense approach would avoid the majority’s “all or nothing” implementation scheme, which effectively frustrates the purpose of the recall statute to give effect to the will of the people, as expressed in their right to vote. Cf. Firestone v. News-Press Pub. Co., 538 So.2d 457, 460 (Fla.1989) (approving commonsense implementation of valid portion of section 101.121, Florida Statutes, which broadly read, in pertinent part, that “no person who is not in line to vote may come [into] any polling place from the opening to the closing of the polls, except the officially designated watchers, the inspectors, the clerks of election, and the supervisor of elections or his deputy,” to not exclude persons accompanying aged or infirm voters, children of voting parents, doctors entering the building to treat voters needing emergency care, or persons bringing food or beverages to the election workers, such activities being recognized as “incidental to the voting process and ... sometimes necessary to facilitate someone else’s ability to vote”).
Such an “all or nothing” approach as adopted by the majority today sanctions inaction by elected officials who are aware of legally insufficient charges in a recall petition, allowing them to “sit on their hands” awaiting the outcome of the election, only to invalidate the entire process (in the event of an unfavorable outcome) through a judicial determination after the fact and after the vote. It affords office holders unlimited opportunities to challenge the legal sufficiency of recall petitions at the expense of potentially destabilizing and frustrating the electoral process. While it ensures that a recall petition, if challenged (at any point in the process), will not be based upon legally insufficient grounds, it turns a deaf ear to the voice of the people, unless that voice speaks with unerring legal proficiency. It is my experience that even the most scholarly of authors at times fail in absolute clarity, depending upon the perspective of the reader. In my view (upon the facts presented here), it is unsound to require trial courts to grant injunctive relief as a matter of law, without ever addressing the “abuse of discretion” standard heretofore required by Florida law.

. Gaivin, 721 So.2d at 1226

. Section 100.361, Florida Statutes, provides, in pertinent part:
100.361. Municipal recall.—
(1) RECALL PETITION. — Any member of the governing body of a municipality or charter county, hereinafter referred to in this section as "municipality,” may be removed from office by the electors of the municipality. When the official represents a district and is elected only by electors residing in that district, only electors from that district are eligible to sign the petition to recall that official and are entitled to vote in the recall election. When the official represents a district and is elected at-large by the electors of the municipality, all electors of the municipality are eligible to sign the petition to recall that official and are entitled to vote in the recall election. Where used in this section, the term "district” shall be construed to mean the area or region of a municipality from which a member of the governing body is elected by the electors from such area or region. Members may be removed from office by the following procedure:
(a) A petition shall be prepared naming the person sought to be recalled and containing a statement of grounds for recall in not more than 200 words limited solely to the grounds specified in paragraph (b). If more than one member of the governing body is sought to be recalled, whether such member is elected by the electors of a district or by the electors of the municipality at-large, a separate recall petition shall be prepared for each member sought to be recalled.
[[Image here]]
Electors of the municipality or district making charges contained in the statement of grounds for recall and those signing the recall petition shall be designated as the "committee.” A specific person shall be designated in the petition as chair of the committee to act for the committee. Electors of the municipality or district are eligible to sign the petition. Signatures and oaths of circulators shall be executed as provided in paragraph (c). All signatures shall be obtained within a period of 30 days, and the petition shall be filed within 30 days after the date the first signature is obtained on the petition.
(b) The grounds for removal of elected municipal officials shall, for the purposes of this act, be limited to the following and must be contained in the petition:
1. Malfeasance;
2. Misfeasance;
3. Neglect of duty;
4. Drunkenness;
5. Incompetence;
6. Permanent inability to perform official duties; and
*1195 7. Conviction of a felony involving moral turpitude.
(c) Each elector of the municipality signing a petition shall sign his or her name in ink or indelible pencil as registered in the office of the supervisor of elections and shall state on the petition his or her place of residence and voting precinct. Each petition shall contain appropriate lines for signatures and addresses of electors and an oath, to be executed by the circulator thereof, verifying the fact that the circulator saw each person sign the counterpart of the petition, that each signature appearing thereon is the genuine signature of the person it purports to be, and that the petition was signed in the presence of the circulator on the date indicated.
(d) The petition shall be filed with the auditor or clerk of the municipality or charter county, or his or her equivalent, hereinafter referred to as clerk, by the person designated as chair of the committee, and, when a facially valid petition meeting the requirements of paragraph (b) is filed, the clerk shall submit such petition to the county supervisor of elections who shall, within a period of not more than 30 days after the petition is filed with the supervisor, determine whether the petition contains the required valid signatures. If it is determined by the clerk that the petition does not meet the requirements of paragraph (b) and therefore is not facially valid, the clerk shall so notify the governing body of the municipality or charter county and take no further action. The petition cannot be amended after it is filed with the clerk. The supervisor shall be paid by the persons or committee seeking verification'the sum of 10 cents for each name checked.
(e) If it is determined that the petition does not contain the required signatures, the clerk shall so certify to the governing body of the municipality or charter county and file the petition without taking further action, and the matter shall be at an end. No additional names may be added to the petition, and the petition shall not be used in any other proceeding.
(f) If it is determined that the petition has the required signatures, then the clerk shall at once serve upon the person sought to be recalled a certified copy of the petition. Within 5 days after service, the person sought to be recalled may file with the clerk a defensive statement of not more than 200 words. The clerk shall, within 5 days, prepare a sufficient number of typewritten, printed, or mimeographed copies of the recall petition and defensive statement, as well as the names, addresses, and oaths on the original petition, and deliver them to the person who has been designated as chair of the committee and take his or her receipt therefor. Such prepared copies shall be entitled "Recall Petition and Defense” and shall contain lines and spaces for signatures of registered electors, place of residence, election precinct number, and date of signing, together with oaths to be executed by the circulators which conform to the provisions of paragraph (c). The clerk shall deliver forms sufficient to carry the signatures of 30 percent of the registered electors.
(g) Upon receipt of the "Recall Petition and Defense,” the committee may circulate them to obtain the signatures of 15 percent of the electors. Any elector who signs a recall petition shall have the right to demand in writing that his or her name be stricken from the petition. A written demand signed by the elector shall be filed with the clerk and upon receipt of the demand the clerk shall strike the name of the elector from the petition and place his or her initials to the side of the signature stricken. However, no signature may be stricken after the clerk has delivered the "Recall Petition and Defense” to the supervisor of elections for verification.
(h) Within 60 days after delivery of the “Recall Petition and Defense" to the chair, the chair shall file with the clerk the "Recall Petition and Defense” which bears the signatures of electors. The clerk shall assemble all signed petitions, check to see that each petition is properly verified by the oath of the circulator, and submit such petitions to the county supervisor of elections, who shall determine the number of valid signatures, purge the names withdrawn, certify within 30 days whether 15 percent of the qualified electors of the municipality have signed the petitions, and report his or her findings to the governing body. The supervisor shall be paid by the persons or committee seeking verification the sum of 10 cents for each name checked.
(i) If the petitions do not contain the required signatures, the clerk shall report such fact to the governing body and file the petitions, the proceedings shall be terminated, and the petitions shall not again be used. If the signatures do amount to at least 15 percent of the qualified electors, the clerk shall serve notice of that fact upon the person sought to be recalled and deliver to the governing body a certificate as to the percentage of qualified voters who signed.
(2) RECALL ELECTION. — If the person designated in the petition files with the clerk, within 5 days after the last-mentioned notice, his or her written resignation, the clerk shall at once notify the governing body of that fact, and the resignation shall *1196 be irrevocable. The governing body shall then proceed to fill the vacancy according to the provisions of the appropriate law. In the absence of a resignation, the chief judge of the judicial circuit in which the municipality is located shall fix a day for holding a recall election for the removal of those not resigning. Any such election shall be held not less than 30 days or more than 60 days after the expiration of the 5-day period last-mentioned and at the same time as any other general or special election held within the period; but if no such election is to be held within that period, the judge shall call a special recall election to be held within the period aforesaid.
(3) BALLOTS. — The ballots at the recall election shall conform to the following: With respect to each person whose removal is sought, the question shall be submitted: "Shall be removed from the office of-by recall?” Immediately following each question there shall be printed on the ballots the two propositions in the order here set forth:
"- (name of person) - should be removed from office.”
"- (name of person)-should not be removed from office.”
Immediately to the right of each of the propositions shall be placed a square on which the electors, by making a crossmark (X), may vote either of the propositions. Voting machines or electronic or electromechanical equipment may be used.

. Under the current version of the section 100.361, a recall petition shall contain a statement of grounds for recall "limited solely to the grounds specified in paragraph (b).” This is a change from prior language, which provided that the grounds for recall included the specified grounds. See generally 1975 Op. Att’y Gen. Fla. 75-119 (1975)(opining that, since 100.36 l(l)(b) provided, at that time, that the grounds for recall "included” the specified grounds, notwithstanding a provision in' subsection (8) that "all municipal charters and special law provisions which are contrary to the provisions of this act are hereby repealed to the extent of this conflict,” additional grounds could be specified by ordinance). Thus, "[t]he procedure for recall of elected members of the governing body of a Florida municipality or charter county is now uniform unless a special act has been adopted subsequent to or contemporaneously with the latest revision to section 100.361 providing a different procedure.” Michael S. Davis & Mirella Murphy James, A Participatory Democracy with Archaic Rules: Initiative, Referendum, and Recall at the Municipal Level, 22 Stetson L.Rev. 715, 738-39 (1993).

. Specifically, it found that grounds 2, 3, and 4 were "too vague to constitute valid bases for recall under the statute,” and expressed the further view that it was "not confident that ground 5 is legally sufficient.” Garvin, 721 So.2d at 1226. Thus, there is an element of personal perspective in this analysis.

. In so holding, the Fifth District opined that Davis could not be distinguished:
One could attempt to distinguish Davis from Wolfson on the ground that there was some kind of showing in Davis that a substantial number of voters endorsed the petition on the basis of all four charges and that the three charges stricken "superficially appeared] to be more serious” than the remaining legally sufficient charge. Id. However, in the next breath the court recognized that "it is impossible to determine whether those voters would have endorsed the recall petition in the absence of three (3) [invalid] charges.” Id. Nor do we think appellate courts have sufficient guidance in the law to determine whether stricken charges are "more serious” than a remaining sufficient charge. If legally insufficient, it is difficult to conclude the charges are "more serious.”
Garvin, 721 So.2d at 1227.

. See Town of North Miami v. Travis Co., 118 Fla. 879, 885, 160 So. 360, 362 (1935) (indicating that a trial court's denial of injunctive relief will be reversed on appeal only "upon the showing of abuse of discretion”).

. In such case — as recognized by the majority supra at 1192-93 — it may be impossible to prove or determine after the fact how electors would have responded, had a substantial or significant part of a petition containing multiple grounds been eliminated before the qualifying signatures had been obtained. Cf. Davis, 507 So.2d at 797 (observing that, in the case before it, three (3) distinct charges had been ruled invalid and it was "undisputed on this record that a substantial number of voters endorsed the petition on the basis of all four charges,” but agreeing with appellants that it was "impossible to determine whether those voters would have endorsed the recall petition in the absence of three (3) [invalid] charges”).

. At least one court has recognized similarities between the recall process and the citizen initiative process. See McAlpine v. University of Alaska, 762 P.2d 81, 94 (Alaska 1988) (comparing recall petitions to initiative petitions, but recognizing that the analogy was imperfect). However, even that court realized that the goals of the two processes are not identical. In the words of Justice Good-loe (dissenting opinion in In re Recall of Estey, 104 Wash.2d 597, 707 P.2d 1338, 1344-47 (1985), in which the majority distinguished between recall for cause and recall at will), "[a]ny time a recall petition is filed, one may assume that members of the electorate are dissatisfied with the elected.” 707 P.2d at 1345. Cf. Sproat v. Arnau, 213 So.2d 692 (Fla.1968)(upholding as constitutionally sufficient — in a case predating the uniform recall statute currently embodied in section 100.361 — an affidavit in support of a recall petition alleging loss of confidence in elected officials, where the city charter provided that a charge that a majority of the electors had lost confidence in the commissioners sought to be recalled would be sufficient), cited in Taines v. Galvin, 279 So.2d 9, 11 (Fla.1973). As stated by the McAlpine Court:
[A] recall is different from an initiative. Sponsors of a recall petition want to remove a person from office. They would probably continue to want that person removed even if some of their grounds are adjudged legally insufficient. Thus, they care more about the result than the exact text of their petition. An initiative, on the other hand, proposes a law defined by its text. Some sponsors or subscribers may regard the wording as crucial.
*1199 McAlpine, 762 P.2d at 94 n. 23.

. This is not an issue of ambiguity, or a lack thereof, as the majority suggests. See discussion supra at 1192 (reflecting that the language of the recall statute is "unambiguous”). Here, while the statute creates a framework for the recall process, by its silence on this particular point, it has left to judicial interpretation the details of implementation in cases such as this one. Cf. Adams v. Adams, 131 Fla. 777, 780, 180 So. 516, 518 (1938) (observing, in a lawsuit involving a challenge, as invalid for uncertainty, to a statute which attempted "to set out in detail a scheme for the levy, assessment, and collection of delinquent city taxes” that, while the Court could not "commend it as a paragon of certitude or completeness” because it was "in fact fraught with the uncertainties that often inhere in acts where meticulous details are sought to be defined,” nonetheless, the Court could not “see that it requires more of interstitial supply to make it articulate than courts and administrative offices are authorized to and do in fact frequently contribute ”) (emphasis supplied). Although the dissenting view regarding what should happen in the event a petition contains both valid and invalid charges is guided by the procedural structure of the recall statute, particularly in light of this Court’s split of opinion regarding how the Legislature intended this important electoral process to function, it might be appropriate for the legislature to clarify its intentions regarding this issue.

. In the State of Washington, the recall statute contains a limitation period within which challenges may be brought. It interpreting that provision, the Washington Supreme Court had occasion to discuss the policy behind requiring office holders to take prompt action:
Obviously, the time to determine the sufficiency of the charges and the appropriate wording for'the ballot synopsis is before and not after the circulation of the recall petitions. This is demonstrated by the cogent and convincing argument of the respondent that it cannot be presently determined how many voters signed the recall petitions because of one or another of the charges now held to be insufficient.
The statutes covering the recall procedure provide that any proceeding to compel or prevent the performance of any act in relation to the recall not in compliance with those statutes shall be begun within ten days from the time the cause of complaint arises and shall be considered an emergency matter of public concern and take precedence over other cases. RCW 29.82.160, cf. Rem.Rev.Stat. § 5363.
In the present case, the clerk eliminated one of the charges, apparently believing that it did not meet the statutory requirement of misfeasance or malfeasance in office or a violation of the oath of office by the mayor, and prepared a ballot synopsis. There was no challenge of that ballot synopsis by either the mayor or the parties who *1201 filed the charges, and it became a part of the recall petitions as required by statute.
After the recall petitions had been circulated and the signed petitions had been filed with the clerk, the mayor brought this action to enjoin the clerk from calling the election. It was conceded at the trial that the canvass of the petitions provided for by [applicable statutory provisions] showed the requisite number of valid signatures to authorize a recall election.
Two questions of law were presented to the trial court. The first involved the sufficiency of the charges. The trial court found that three of the charges met the statutory requirements and twelve did not. The second was, May a recall election be had when some but not all of the charges have been found to be sufficient? The trial court, relying upon Gibson v. Campbell, supra, answered this question in the negative and enjoined the election.
The answer should have been in the affirmative. The respondent mayor, not having challenged the sufficiency of the charges at a time when the charges now held to be insufficient could have been stricken and reference to them eliminated from the ballot synopsis, cannot now complain of the fact that some voters may have been induced to sign the recall petition because of charges now held to be insufficient. The rule is that at this state of the proceedings, the recall petitions having been circulated, signed and canvassed, only the complete failure of all of the charges to meet the statutory requirements can justify enjoining the holding of the election; one charge meeting the statutory requirement is sufficient.
There being a valid and sufficient charge filed against the mayor, there having been no timely challenge to the inclusion of the insufficient charges in the ballot synopsis, and there being the requisite number of valid signatures on the recall,petitions, the respondent mayor is not entitled to enjoin the holding of the recall election.
Morton v. McDonald, 41 Wash.2d 889, 252 P.2d 577, 579 (1953) (citations omitted).

. From the record here, however, it does not appear that the petitioner ever requested that the invalid charges be stricken from the election ballot, nor does it appear that any of the charges actually appeared on the ballot.

. The Meiners court explained the judicial role involved in reviewing the sufficiency of a recall petition:
We emphasize that it is not our role, but rather that of the voters, to assess the truth or falsity of the allegations in the petition. By holding that the petition alleges that the board members failed to perform their prescribed duties, we do not decide, and have no basis for deciding, whether the members in fact failed to perform these duties. We are in a position similar to a court ruling on a motion to dismiss a complaint for failure to state a claim. For these purposes, we must take the allegations as true, without thereby prejudging the trier of fact’s role to determine whether or not they are true.
687 P.2d at 300 n. 18.